IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-212-D

| | | |
|---|---|---|
| TALYA JANESE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Talya Janese Williams ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that she is not disabled.[2] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 20. Both filed memoranda in support of their respective motions. D.E. 17, 21. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 18 July 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 19 March 2012, alleging a disability onset date of 28 November 2009. Transcript of Proceedings ("Tr.") 9. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 9. On 8 January 2014, plaintiff amended her onset date to 19 March 2012. Tr. 221. On 28 February 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 43-72. The ALJ issued a decision denying plaintiff's claims on 3 April 2014. Tr. 9-23. Plaintiff timely requested review by the Appeals Council (Tr. 38) and subsequently submitted additional medical records to the Appeals Council for the first time spanning the period from 9 April 2014 to 21 May 2014 (732-48). On 3 August 2015, the Appeals Council admitted the additional medical records. *See* Tr. 2, 4. Notwithstanding admission of the additional evidence, the Appeals Council denied the request for review. Tr. 1.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 28 September 2015, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. §

2

1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C.    ALJ's Findings

The ALJ found that plaintiff was 35 years old on the amended alleged onset date of disability,[6] and plaintiff testified that she was 36 years old on the date of the hearing. *See, e.g.*, Tr. 21 ¶ 7; 47. The ALJ found that plaintiff has at least a high school education (Tr. 21 ¶ 8) and past relevant work as a cafeteria food server, fast food worker, waitress, and tray worker (Tr. 21 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the amended date of alleged onset of disability. Tr. 11 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: human immunodeficiency virus ("HIV"), scoliosis, vision impairment, anxiety disorder, and affective disorder. Tr. 11 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 12-14 ¶ 4.

---

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[6] This finding is erroneous. The ALJ found, and plaintiff agreed, that she was born in the second half of 1977. *See* Tr. 21 ¶ 7; 47. Therefore, on 19 March 2012, the amended alleged disability onset date, she was 34 years old. The error does not appear to be material in any respect.

4

The ALJ next determined that plaintiff had the RFC to perform a limited range of sedentary work:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[7] except that she cannot . . . climb ladders, ropes, or scaffolds. The claimant can occasionally kneel, crouch, stoop, and crawl. She must avoid exposure to work hazards. The claimant can frequently perform fine and gross manipulation with her right upper extremity. She can perform no work requiring good depth perception or good right-sided peripheral vision. The claimant can tolerate occasional changes in the work settings/procedure, but she cannot work in a fast-paced production environment.

Tr. 14-15 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform her past relevant work. Tr. 21 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of weight tester, dispatcher, and telephone information clerk. Tr. 22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the amended date of the alleged onset of disability, 19 March 2012, through the date of the decision, 3 April 2014. Tr. 23 ¶ 11.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial

---

[7] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "S-Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

Case 7:15-cv-00212-D   Document 23   Filed 02/06/17   Page 5 of 21

evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently

explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.   OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that the ALJ erred in his assessment of the opinions of several of plaintiff's treating sources, including certified family nurse practitioner Carla Savinon, DNP, FNP-BC[8] ("FNP Savinon") of New Hanover Community Health Center and infectious disease specialist Matthew Sincock, M.D. of Wilmington Health Associates; handling of plaintiff's ability to maintain concentration, persistence, or pace, including the extent to which it is addressed in the RFC assessment; and determination of other aspects of plaintiff's RFC. The court's analysis focuses on the ALJ's assessment of FNP Savinon's and Dr. Sincock's opinions because it is dispositive of this appeal, but also addresses several other deficiencies meriting attention on remand.

## IV.   DISCUSSION

### A.   Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant]

---

[8] "DNP" refers to the doctor of nursing practice degree. *See* Am. Ass'n of Colleges of Nursing, DNP Fact Sheet, http://www.aacn.nche.edu/media-relations/fact-sheets/dnp (last visited 6 Feb. 2017). "FNP-BC" signifies certification by the American Nurses Credentialing Center ("ANCC"). *See* ANCC, Family Nurse Practitioner Certification Eligibility Criteria, http://www.nursecredentialing.org/Certification/ExamResources/Eligibility/ECategory/FamilyNPEligibility.html (last visited 6 Feb. 2017).

can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight

to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources," including nurse practitioners. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (listing nurse practitioners and therapists among "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under

appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B.     Opinions of FNP Savinon and Dr. Sincock

The record shows approximately 15 visits by FNP Savinon with plaintiff from 28 March 2012 to 7 January 2014. *See* Tr. 381-82, 397-401, 572-87, 589-602, 616-26, 655-69. On 7 January 2014, FNP Savinon completed a "PHYSICAL Residual Function Capacity Medical Source Statement" ("FNP Savinon's statement") Tr. 604-07. In the statement, FNP Savinon opined to the effect that plaintiff's impairments were disabling. Specifically, as summarized by the ALJ, FNP Savinon opined, in part, as follows:

Nurse practitioner (NP) Carla Savinon completed a medical source statement on January 7, 2014, reporting that the claimant could never lift or carry more than 20 pounds, and could only lift 5 pounds occasionally, and up to 15 pounds rarely, despite her having full strength in all of her extremities. According to NP Savinon, the claimant would miss 5 or more days of work per month. Although the claimant was assessed as being independent in her activities of daily living, NP Savinon reported she could use her hands, fingers, and arms for gross manipulation, fine manipulation, and reaching, for zero percent of an 8-hour workday. NP Savinon also reported that the claimant would need to recline or lie down for 2-hours in an 8-hour workday, and that she could sit, stand, and walk for less than 1 hour each in an 8-hour workday. The claimant would also reportedly be off-task for more than 30% of an 8-hour workday. NP Savinon described the claimant's prognosis as "good" (Exhibits 8F,[9] 21F).

Tr. 19 ¶ 5.

After reviewing selected provisions of Social Security Ruling 06-03p, the ALJ stated that

he gave no weight to the opinions in FNP Savinon's statement, explaining as follows:

> According to 20 CFR 404.1513(d) and 416.913(d), a nurse practitioner is classified as an "other source." Here, NP Savinon has made a judgment about the nature and severity of the claimant's impairments, including what she felt the claimant could still do despite the impairments and her physical restrictions. In essence, she has attempted to provide a medical opinion. However, because she is an "other source," and not an "acceptable medical source" as defined above, her judgments do not qualify as a "medical opinion" (20 CFR 404.1527(a)(2) & (b) and 416.927(a)(2) & (b)).

> Still, SSR 06-03p states that opinions from these other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file. Therefore, while the undersigned has evaluated this opinion, since it is not a medical opinion, it is not assigned any weight. The undersigned does note; however, that this opinion appears exaggerated, and is not remotely consistent with the objective medical evidence of record. Notably, records dated as recently as January 8, 2014, note that the claimant's mood was not depressed and she was not anxious. No memory deficits were noted and her motor and sensory examinations were intact (Exhibits 21F, 27F).

Tr. 19-20 ¶ 5

---

[9] The citation to Exhibit 8F appears to be in error. That exhibit is the report of an examining state agency consulting physician, Ayman Gebrail, M.D., discussed further below.

The ALJ's analysis of FNP Savinon's statement contains clear error. The error lies in the ALJ's assignment of no weight to the statement based on the fact that FNP Savinon is not an acceptable medical source, but an "other source," and therefore cannot issue medical opinions as defined under the Regulations. Again, the ALJ stated that "while the undersigned has evaluated this opinion, *since it is not a medical opinion*, it is not assigned any weight." Tr. 20 ¶ 5 (emphasis added). An ALJ may not disregard opinions on this basis, but must assign them such weight as the ALJ deems warranted based on the same factors used to determine the weight due opinions of acceptable medical sources not given controlling weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4; *see also Wagner v. Colvin*, 5:15-CV-464-D, 2016 WL 4098685, at *9 (E.D.N.C. 12 July 2016) ([N]urse practitioners and the remaining other sources are important and must be considered . . . ."), *mem. & recomm. adopted*, 2016 WL 4059166 (27 July 2016); *Jones v. Colvin*, No. 5:13-CV-27-FL, 2014 WL 309415, at *6-7 (E.D.N.C. 28 Jan. 2014); (adopting memorandum and recommendation recommending remand on the grounds that the court could not determine "whether the ALJ's decision is supported by substantial evidence in the absence of an explanation by the ALJ of the weight he accorded opinions [of an "other source"]"); *Young v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-3075, 2013 WL 4514529, at *3 (D. Md. 22 Aug. 2013) (remanding, in part, on the basis that there was no express assignment of weight to the opinions of an "other source"); *Adkins v. Astrue*, No. 1:10-cv-00887-PWG, 2012 WL 458796, at *2 (D. Md. 10 Feb. 2012) (remanding case, in part, because ALJ improperly accorded little weight to the opinion of a physician's assistant on the grounds that she was an "other source"); *Ware v. Astrue*, Civ. Act. No. 2:10-CV-67, 2011 WL 1297957, at *16 (N.D.W. Va. 14 March 2011) (remanding on the basis that the ALJ must clarify the weight afforded the opinion of an "other source"), *rep. & recomm. adopted*, 2011 WL 1258118 (1 Apr. 2011). The rejection of FNP Savinon's opinions

on this basis is particularly inappropriate in light of her superior qualifications, namely, her professional certification and doctorate in nursing.

The ALJ's error appears to be based on his erroneous interpretation of Social Security Ruling 06-03p. In reviewing the provisions of this ruling, the ALJ states:

> Pursuant to SSR 06-03p, only "acceptable medical sources" can give medical opinions. . . . In addition to evidence from "acceptable medical sources," SSR 06-03p states that we *may* use evidence from "other sources" to show the severity of the individual's impairment(s), and how it affects the individual's ability to function (emphasis added).

Tr. 19 ¶ 5. The second sentence is almost a verbatim recitation of the corresponding provision in the Ruling 06-03p, which reads: "In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2. As used in this provision of the ruling, the word "may" simply signifies that evidence from "other sources" might or might not be present in a case. It does not signify that an ALJ has the option of not using such evidence—that is, assigning it no weight—simply because it originates from an "other source."

Other portions of Ruling 06-03p make that clear:

> These regulations [20 CFR 404.1527 and 416.927] provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. *Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.*
> . . . .

As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), we consider *all relevant evidence* in the case record when we make a determination or decision about whether the individual is disabled.

Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *3, 4 (emphasis added).

As quoted above, notwithstanding his rejection of FNP Savinon's statement based on her status as an "other source," the ALJ goes on to make additional findings about the statement:

The undersigned does note; however, that this opinion appears exaggerated, and is not remotely consistent with the objective medical evidence of record. Notably, records dated as recently as January 8, 2014, note that the claimant's mood was not depressed and she was not anxious. No memory deficits were noted and her motor and sensory examinations were intact (Exhibits 21F, 27F).

Tr. 20 ¶ 5. The ALJ does not explain how these additional findings relate to his rejection of the statement on the basis of FNP Savinon's status. What, if any, role they played in the ALJ's analysis is unclear.

The ambiguity is heightened by the ALJ's subsequent assessment collectively of "[r]esidual functional capacity forms [that] have been completed by a nurse practitioner and physician treating the claimant." Tr. 21 ¶ 5. Although the ALJ gives no citations to the "forms" to which he is referring, they necessarily appear to be FNP Savinon's statement and a separate checklist, also dated 7 January 2014, signed by both FNP Savinon and Dr. Sincock entitled "Medical statement regarding HIV and AIDs for Social Security disability claim" (Tr. 609-12) ("joint statement"). There are simply no other forms of record to which the ALJ could be referring. The record shows that Dr. Sincock had approximately ten visits with plaintiff from 6 July 2012 to 8 January 2014. *See* Tr. 444-57, 470-84, 499-517, 550-68, 675-99.

The ALJ discusses FNP Savinon's statement and the joint statement collectively as follows:

Both, of which [forms], indicated that the claimant could perform significantly less than a full range of sedentary work. Both also indicate that fatigue would be a

14

major factor and the claimant being unable to sustain work activity. The undersigned does not find those opinions to be credible, especially, since the claimant barely mentioned fatigue in her testimony. There is also no explanation as to why the claimant's scoliosis is more debilitating now than when the claimant was working.

Tr. 21 ¶ 5.

As this discussion makes clear, the ALJ is discounting opinions in both FNP Savinon's statement and the joint statement. He does not, though, specify the weight that he is according these opinions. Significantly, he does not distinguish between FNP Savinon's statement and the joint statement in the extent to which he is discounting them. Thus, the ALJ appears by this analysis to be discounting FNP Savinon's statement and the joint statement to the same degree. He had previously indicated, of course, that he was giving FNP Savinon's statement no weight. This subsequent collective analysis therefore suggests that the ALJ was also giving the joint statement no weight.

But in another portion of his decision, the ALJ addressed the joint statement separately. He describes the joint statement as follows:

Dr. Sincock together with NP Savinon completed an HIV and AID preprinted checklist on January 7, 2014, reporting that the claimant was incapable of working and that she could only sit for 30 minutes, stand for 15 minutes, and lift 5 pounds occasionally and no amount of weight frequently. The claimant was described as moderately impaired with regard to her ability to understand, remember and carry out detailed instructions and maintain concentration (Exhibit 22F).

Tr. 20 ¶ 5.

The ALJ then explains that he is giving the joint statement "little weight." Tr. 20 ¶ 5. The ALJ states:

As noted above, this opinion is inconsistent with Dr. Sincock's office records dated January 8, 2014. While the record and the claimant's testimony indicates that she is independent [in] her activities of daily living, the checklist notes that the claimant has a "marked" restriction of activities of daily living and "marked" difficulties in completing tasks in a timely manner due to deficiencies in concentration,

15

persistence, or pace. Symptoms of severe fatigue, severe malaise, severe nausea, and severe insomnia, are also checked; though not reported in the treatment notes. The checklist also notes that the claimant had significant side effects from medications, despite not being reported in treatment notes (Exhibit 22F). Little weight is accorded to this checklist, as it [is] not consistent with the objective medical evidence of record, or consistent with Dr. Sincock's office records (Exhibit 27F).

Tr. 20 ¶ 5. The ALJ thereby appears to be treating the joint statement differently when evaluated separately than when he assessed it collectively with FNP Savinon's statement.

In sum, when reviewing FNP Savinon's statement separately, the ALJ expressly provides it no weight (without specifying the assigned weight, if any, in his additional findings). When he reviews the joint statement and FNP Savinon's statement collectively, he appears to assign them the same weight without specifying what that is. But when he reviews the joint statement separately, the ALJ states that he accords it "little weight." The ALJ does not explain these ambiguities and inconsistencies in his assessment of the opinions in FNP Savinon's statement and the joint statement. The court is left to speculate as to the weight the ALJ actually assigned these opinions.

The ALJ therefore failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" he reached regarding these opinions, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The court is thereby precluded from conducting a meaningful substantial-evidence review of the ALJ's decision, and remand is required. *Id.* at 190-91 (holding that the ALJ's explanation that he gave "limited weight" to medical opinions because "the objective evidence or the claimant's treatment history did not support" them and similarly cursory explanations of other opinions precluded meaningful substantial-evidence review (internal quotation marks omitted)) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015)

(holding that explanation by ALJ that he gave "less weight" to medical opinions because they were "not well-supported by the medical record" was so "cursory and conclusory" as to preclude meaningful review and remanding case (internal quotation marks omitted)); *see also Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (D.E. 31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818, at *1 (20 Aug. 2014)).

The need for remand here is enhanced by the potentially significant role of the opinion evidence in question in this case. The opinions of a treating physician are, of course, by their nature of potential significance. Dr. Sincock's specialization in infectious disease lends potential weight to his opinions. The opinions of a treating nonphysician source such a nurse practitioner can be of significance as well, especially one as highly trained as FNP Savinon. Further, both Dr. Sincock and FNP Savinon had extended treatment relationships with plaintiff. In addition, FNP Savinon's statement and the joint statement comprise two of the three sets of opinions by treating providers in this case. The other is the 30 July 2013 psychological assessment by licensed clinical addiction specialist Daphne F. Benthall, MS, LCASA of A Helping Hand of Wilmington (Tr. 628-46), which the ALJ also discounted (Tr. 20-21 ¶ 5).[10] While the inconsistencies in the ALJ's analysis relate, in part, to the assignment of "no weight" versus "little weight" to opinions, the ALJ

---

[10] Plaintiff did not assert specific objections to the ALJ's analysis of the psychological assessment.

himself deemed the distinction a sufficiently meaningful one to make it. Moreover, the RFC the ALJ found plaintiff to have restricts her to a limited range of sedentary work. It is conceivable that the inclusion of additional limitations in plaintiff's RFC resulting from a proper analysis of the opinions in FNP Savinon's statement and the joint statement could further erode the occupational base available to her and alter the outcome of this case. Therefore, aside from the considerations noted below, the ALJ's errors are not harmless and require remand. *See, e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Pulliam v. Colvin*, No. 1:13-cv-176, 2016 WL 843307, at *4 (M.D.N.C. 1 Mar. 2016) (holding that error in ALJ's failure to expressly weigh treating physician's medical opinion was not harmless and warranted remand).

## C.     Additional Deficiencies in the ALJ's Decision

The errors by the ALJ with respect to FNP Savinon's statement and the joint statement are compounded by his failure to explain more comprehensively his evaluation of the psychological assessment performed by addiction specialist Benthall. The ALJ rejected the Global Assessment of Functioning score assigned by addiction specialist Benthall, but did not expressly address the other opinions expressed in her assessment. *See* Tr. 20-21 ¶ 5. Further, the ALJ failed to state or explain the weight he accorded the opinions of examining state agency consulting physician Ayman Gebrail, M.D. of Coastal Internal Medicine, PA, who evaluated plaintiff on 31 May 2012. Tr. 18-19 ¶ 5; 428-33 (Dr. Gebrail's report).

There are also deficiencies in the ALJ's assessment of plaintiff's ability to maintain concentration, persistence, or pace. The ALJ found:

> The third functional area is concentration, persistence, or pace. In this area, the claimant has no more than moderate limitation. The claimant has no memory deficits (Exhibit 27F). It is reasonable to suggest that the claimant's drug use has not benefited her cognitively.

Tr. 13 ¶ 4. This determination leaves unclear whether the ALJ is making a definitive determination that plaintiff actually has a limitation in concentration, persistence, or pace based on his qualification that she has "no more than moderate limitation in this area." Tr. 13 ¶ 4. He also fails to make clear the basis of any limitation in this area. He implies that plaintiff's history of illicit drug use is the basis by stating that "[i]t is reasonable to suggest that the claimant's drug use has not benefited her cognitively." Tr. 13 ¶ 4. But he speaks elsewhere of "accord[ing] the claimant the benefit of the doubt" in finding her mental impairments to be severe (Tr. 18 ¶ 5) and limited plaintiff to "low stress tasks" in his RFC determination "due to psychological allegations" (Tr. 21 ¶ 5). Further, by "low stress tasks," the ALJ appears to be referring to the limitations in the RFC determination to "occasional changes in the work settings/procedure, but . . . [not] work in a fast-paced production environment." Tr. 14-15 ¶ 5. These limitations do not address tasks per se. Again, there is some degree of ambiguity.

In light of the fatal flaws in the ALJ's assessment of the opinions in FNP Savinon's statement and the joint statement, the court need not address whether these additional deficiencies standing alone would warrant remand. But they unquestionably reinforce the need for remand when considered with those other flaws. The Commissioner should ensure that these additional deficiencies are addressed on remand.

## V.    CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 16) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 20) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 20 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 6th day of February 2017.

James E. Gates
United States Magistrate Judge